JONES, Judge.
On August 3, 1978, plaintiffs, parents of school children residing in Bartholomew Woods Subdivision in Morehouse Parish, instituted this action against the Morehouse Parish School Board and O. L. Harper, Superintendent of the Morehouse Parish Schools, with the following prayer for judgment:
“WHEREFORE, petitioners pray that, after due proceedings, this court issue preliminary and permanent injunctions, requiring defendants, Morehouse Parish School Board and 0. L. Harper, Superintendent of the Morehouse Parish Schools, to issue permits to petitioners and their school age children under La.R.S. 17:155, approving the attendance of petitioners’ children in the Sterlington High and Elementary Schools of Ouachita Parish, Louisiana for the 1978-79 school term and thereafter.
*589 Petitioners further pray that, after due proceedings, a declaratory judgment issue, decreeing that the Morehouse Parish Schools are inadequate as to petitioners’ children and that therefore these children have the right to attend the Sterlington schools of Ouachita Parish.”
LSA-R.S. 17:155 provides:
“Attendance of pupils in schools of adjoining parishes or cities; per capita cost of instruction
Children for whom adequate schools of suitable grade have not been provided in their home parish may attend schools in an adjoining parish. In such cases, permits shall be secured from the parish superintendent of the children’s home parish, and after they have been approved by the parish superintendent of the parish in which the schools that the children desire to attend are located, they shall be presented to the principals of the schools which the children wish to attend, who shall be required to admit the children and provide for their instruction the same as if they were residents of the parish. The superintendent of the children’s home parish shall settle monthly for the instruction of such children as shall take advantage of the provisions of this Section, the settlement for each child to be on the basis of the per capita cost of instruction in the school attended by that child. ...”
Plaintiffs allege the Bastrop school in Morehouse Parish is inadequate because it is located 15 miles from the Bartholomew Woods Subdivision requiring a 25 mile one-way bus trip over hazardous roads and an unsafe single lane bridge, whereas the Ster-lington school in Ouachita Parish is located two miles from the Bartholomew Woods Subdivision.
The trial court dismissed plaintiff’s suit by sustaining defendants’ exception of lack of subject matter jurisdiction based upon preemption by the U. S. District Court, Western District of Louisiana, in actions entitled United States of America v. Morehouse Parish School Board, et al, C. A. No. 14,429 and Jimmy Andrews, et al v. City of Monroe, et al, C. A. No. 11,297, wherein the U. S. District Court is exercising exclusive and continuing jurisdiction over the placement of Morehouse Parish school children in parishes other than Morehouse. The trial court also sustained defendants’ exception of collateral estoppel. Plaintiffs appeal. The defendants answer the appeal contending the trial court should have also sustained their plea of res judicata because of earlier similar litigation. We affirm the trial court’s judgment of lack of subject matter jurisdiction and thus do not reach the issues of collateral estoppel[1] and res judicata. The only issue on appeal is does a Louisiana court have subject matter jurisdiction to transfer Morehouse Parish school children to schools outside of Morehouse Parish when a prior federal court judgment requires such transfers be presented to the court for its decision on whether the transfer will be permitted?
In Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, the Supreme Court held segregated schools violated the Fourteenth Amendment of the U. S. Constitution and ordered desegregation of all schools. These decisions were resisted by state legislatures and officials which resulted in the subsequent decision of Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, wherein the Supreme Court stated the Constitution is the supreme law of the land and under the Supremacy Clause of Article VI the federal courts’ interpretation of the Constitution is binding on the states and all local officials including school boards and school superintendents who are agents of the state.
In cases involving compliance with Brown II’s[2] order to desegregate, school boards *590 were required to submit desegregation plans to the federal district courts for approval. Federal district courts were required to retain jurisdiction over the administration of the desegregation plans by the school boards. Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727.
Pursuant to the requirement of the Brown decisions to desegregate schools, the U. S. District Court for the Western District of Louisiana, entered a decree establishing desegregation plans based upon freedom of choice in United States of America v. Morehouse Parish School Board, et al, C. A. No. 14,429 and Jimmy Andrews, et al v. City of Monroe, et al, C. A. No. 11,297, which plans were later modified to provide for immediate elimination of the dual school systems as required by Green v. County School Board of New Kent County, Virginia et al, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, and Raney v. Board of Education of Topeka, supra. See Hall v. St. Helena Parish School Board, 417 F.2d 801 (5th Cir. 1969), wherein the District Court was ordered to make the plan modification and Conley v. Lake Charles School Board, 303 F.Supp. 394 (W.D.La.1969), wherein on June 5, 1969 the Morehouse Parish School Board and the City of Monroe were ordered by the U. S. District Court to submit plans complying with Green and Raney for approval of the District Court no later than July 25, 1969. (The St. Helena and Lake Charles decisions contained numerous consolidated desegregation cases, including the Morehouse and Monroe cases.) While the order establishing this plan is not in the record, nor contained in any reported decision, we are convinced that it was in due course rendered. In the Morehouse and City of Monroe cases, the District Court issued the following order in connection with its supervision of compliance with its desegregation plans on November 4, 1969:
“UNITED STATES DISTRICT COURT WESTERN DISTRICT OF LOUISIANA MONROE DIVISION
UNITED STATES OF AMERICA V C.A. NO. 14,429 MOREHOUSE PARISH SCHOOL BOARD, ET AL
JIMMY ANDREWS, ET AL V. C.A. NO. 11,297 CITY OF MONROE, ET AL
DECREE
Complaints have reached the Court concerning apparent violations of the past decrees of this Court, in that certain children of Morehouse Parish are attending schools in the City of Monroe under the jurisdiction of the Monroe City School Board.
IT IS DECREED that a child shall attend the school in the district where his or her parents are domiciled; any exception to this ruling shall be presented by the parents and the School Boards affected to this Court for its ruling; and, the School Boards affected shall bear responsibility to enforce this decree within the spirit of the law.
Done this 4th day of November, 1969, in Chambers in the City of Monroe, Louisiana.
H. Ben C. Dawkins /s
JUDGE ”
Following this federal court decree, the Morehouse Parish School Board and its Superintendent of Schools were prohibited from taking any action that would permit students domiciled with their parents in Morehouse Parish to attend schools in Oua-chita Parish and state courts had no jurisdiction to order them to violate the federal court decree.
*591 Plaintiff in brief contends the decision of Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970) is authority for reversal of the district court’s decision refusing to consider the issuance of an injunction ordering the More-house Parish School Board and Superintendent of Schools of Morehouse Parish to violate the federal court decree. The Singleton decision involved desegregation plans filed by numerous school districts located in the states of Mississippi, Texas, Alabama, Louisiana, Georgia and Floridá. The principal thrust of the decision was directed at implementation of the Supreme Court decision in the case of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19. This Supreme Court decision terminated the doctrine of deliberate speed and required immediate replacement of all dual school systems by unitary school systems. The court in Singleton ordered:
“To this end, the district courts are directed to require the respective school districts, appellees herein, to request the Office of Education (HEW) to prepare plans for the merger of the student bodies into unitary systems. These plans shall be filed with the district courts not later than January 6, 1970 together with such additional plan or modification of the Office of Education plan as the school district may wish to offer. The district court shall enter its final order no later than February 1, 1970 requiring and setting out the details of a plan designed to accomplish a unitary system of pupil attendance with the start of the fall 1970 school term. Such order may include a plan designed by the district court in the absence of the submission of an otherwise satisfactory plan. A copy of such plan as is approved shall be filed by the clerk of the district court with the clerk of this court.[2]
The footnote which plaintiffs cite in their brief is direction to the District Courts that they can seek local assistance in the formulation of the plans. The second paragraph of the footnote simply recognizes that there will be problems in the carrying out of the plans which may be resolved on a local community level. The Singleton court points out that the District Court may facilitate the resolution of these problems by directing the appointment of a biracial committee. There is no indication in the body of the decision nor in the footnote that a desegregation order of a U. S. District Court, the plan adopted and the methods of implementation therein contained, can be detracted from, or interfered with by any school board, school official or state court. The Singleton decision does not stand for the proposition that the Morehouse Parish School Board or the Morehouse Parish Superintendent of Schools can take any action in connection with placement of pupils domiciled in Morehouse Parish in schools outside of the parish, either on their own, or in compliance with a state court injunction, without being in direct violation of the federal court order relied upon by the district judge.
The plaintiffs cite Harris County Commissioners Court v. Moore, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32, and Sheffield v. State of Texas, 411 F.Supp. 709 (N.D.Tex.1976), as authority for reversal of the district court. These cases applied the federal doctrine of abstention which generally provides that where federal constitutional claims are premised upon unsettled questions of state law, the federal court may decline to consider the case. In discussing the doctrine, the Harris court stated:
“In Railroad Comm’n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court held that when a federal constitutional claim is *592 premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.
Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law. If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong.” Pp. 83, 84 of 420 U.S., pp. 875, 876 of 95 S.Ct.
In the Harris case there was a constitutional attack upon a Texas statute related to redistricting precincts from which justices of the peace and constables were elected. In the Sheffield case the controversy related to the constitutionality of a Texas statute related to the distribution of state school funds. In these cases the federal court concluded not to decide the federal constitutional question until such time as state courts had clarified unsettled questions of state law, and only then in the event the state court decisions left some viability in a claim of unconstitutionality of the state statutes involved.
These cases are not authority for reversal of the district court’s refusal to accept jurisdiction of a suit seeking an order contrary to a federal decree. The doctrine of abstention applies to a federal court declining to render a judgment on a constitutional question in connection with a state statute. Abstention is unrelated to a situation where a federal court has made a decision in a desegregation case, and ordered a plan for integration spelling out detailed requirements of the manner in which the plan shall be administered, one of the detailed requirements being that no child shall attend school outside of the district wherein his parents are domiciled without permission of the Court.
A U. S. District Court may issue an injunction against a state court to protect and effectuate its judgment. 28 U.S.C. § 2283 [3]. In the decision of Bush v. Orleans Parish School Board, 187 F.Supp. 42 (E.D.La.1960), a state court issued an injunction prohibiting the Orleans Parish. School 'Board from implementing a desegregation plan incorporated in a U. S. District Court decree. The U. S. District Court, based upon the federal supremacy doctrine contained in Cooper v. Aaron, supra, issued an injunction directed at the state court judge:
“IT IS FURTHER ORDERED that the Honorable Oliver P. Carriere, Judge of the Civil District Court for the Parish of Orleans, State of Louisiana, be and he is hereby, restrained and enjoined from enforcing the injunction issued by him on July 29, 1960, in the cause entitled State of Louisiana v. Orleans Parish School Board, et al., No. 382-646, Division A, Docket 5.”
having as its purpose the prohibition of the state court’s interference with the judgment of the federal court. This decision was affirmed in a memorandum opinion by the U. S. Supreme Court, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806, report. See also Thomason v. Cooper, 254 F.2d 808 (8th Cir. 1958), where a U. S. District Court injunction was issued prohibiting the use of a state court injunction for the purpose of interfering with the operation of a desegregation plan incorporated in a federal court decree. The court therein said:
“The federal District Court was certainly not required to permit the decree of the state court to frustrate the judgment and decree of the federal court approving and effectuating the plan of the School Board for the gradual integration of the schools.” p. 811
The U. S. District Court’s judgment relied upon by the trial judge is supreme over *593 and superior to any judgment that the state court might render detracting from or interfering with the U. S. Court decree. The state court had no power to issue an injunction ordering the school board or its superintendent to violate the U. S. Court decree. The state court was without power to issue a declaratory judgment by the terms of which it declared that the plaintiffs’ children domiciled in Morehouse Parish had a right to attend school in Ouachita Parish. The trial court was correct in refusing to consider a suit seeking a judgment which would have been null and unenforceable if rendered[4]. The District Court judgment sustaining the defendants’ exception to jurisdiction over the subject matter is AFFIRMED at appellant’s cost.

. The doctrine of collateral estoppel is not recognized by Louisiana law. Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978).

. 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. This is the manner in which the second Brown decision is frequently referred to in the extensive desegregation jurisprudence.

 In formulating plans, nothing herein is intended to prevent the respective school districts or the district court from seeking the counsel and assistance of the state departments of education, university schools of education or of others having expertise in the field of education.
It is also to be noted that many problems of a local nature are likely to arise in converting to and maintaining unitary systems. These problems may best be resolved on the community level. The district courts should suggest the advisability of biracial advisory committees to school boards in those districts having no Negro school board members.” p. 1217

. 28 U.S.C. § 2283 (1948): “A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.”

. We will not speculate as to the probable decision of the U. S. District Court with regard to the exception to its order which plaintiffs desire. We believe one possible course of action for the plaintiffs to take to obtain the U. S. District Court’s decision is to file in the federal court proceeding the required pleadings, seeking the exception and to join in that proceeding the Morehouse Parish and Ouachita Parish School Boards and their respective Superintendents. These parties are all necessary to an adjudication of the application for exception. In the event these parties refuse to voluntarily participate as party plaintiffs, which seems to be likely in view of the history of this litigation, they may be joined as defendants by use of Federal Rule 19.
Federal Rule 19: “Joinder of persons needed for just adjudication, (a) Persons to be joined if feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, . . It he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.”